Gonzalez, Cifuentes v. INS 04-2572, Mr. Britt and Mr. Kriegsmaier. Take your time setting up. May it please the court, counsel, Steve Britt, B-R-I-T-T, for the appellant Juan Manuel Gonzalez Cifuentes. Your Honors, I thought that this issue... At this time, do you wish to reserve for rebuttal? I don't need time for rebuttal, Your Honor. Thank you. I thought that this issue that I was going to present to the court this morning was esoteric until I heard the lawyers before me. This issue, Your Honor, is fairly straightforward. Do you want us to abstain? We can do that too. We can go back to one of the other cases. Go back to the Board of Immigration Appeals. This particular issue is whether Collateral Stop will particularly claim preclusion and issue preclusion can operate against the Attorney General of the United States and now the Secretary of the Department of Homeland Security in a deportation case or what is now referred to as... Now, another issue is can Res Judicata operate against you in view of the judicial determination of the Second Circuit? I saw that, Your Honor. That's an interesting point. The short answer, I think, to that is that the clerk of the Second Circuit dismissed the case as frivolous and never reached the merits of it. Well, but that case went up in the Second Circuit. Yes, ma'am. And that was a petition for review and this is a habeas corpus appeal. Stemming from the very same immigration judge decision, right? I mean, this is not a different decision. This is the 99 decision from the immigration judge. Yes, sir. That went up to the Second Circuit, got kicked for being frivolous, and now because we're in... It's a good ringtone. That's why we don't walk phones in the courtroom. It's got a... Because of a gap in the way the law was developing, an opportunity to show up in another court of appeals. An opportunity, Your Honor, preserved by the Supreme Court in late June 2001 in Calcano, Martinez, St. Cyr and Zadvitas. Subsequently repealed by the Congress, but that was an opportunity that the Supreme Court put its imprimatur upon after years of litigation following 1996. Sure. But its being here doesn't mean, does it, unless you've got some authority to show us, that we can ignore the Second Circuit's decision to deny an appeal on that very same case. I think that's correct, Judge. I believe that this is not per se res judicata. You may determine that. That, in fact, happened to me in an analogous case to this one not long ago. The Eleventh Circuit made a decision. My case in the Third Circuit was parallel and it was dismissed on res judicata basis. So that can happen. But it's not per se res judicata. You can determine that for yourselves. Certainly it's a danger for this fellow. Let me backtrack to the beginning. Yes, sir. Why do we have jurisdiction? It's very straightforward, Your Honor. I'll take a minute. In 1996, Congress passed what is referred to as IRIRA, the Illegal Immigration Responsibility Act. It was basically a huge tune-up to Title VIII, the Immigration and Nationality Act. I'm talking about the filing. Giving something to the officials to file. They sent it out. It came in late. Is that correct? Yes, sir. Has the mailbox rule ever been applied in immigration proceedings? Interestingly enough, Your Honor, the mailbox rule was addressed by Judge Pollack. Judge Ambrose was on the case, a case a couple of years ago, two years ago, called Don't Worry, I've Repressed It. I've got the citation here. It's a published case. And Judge Pollack, in a footnote to the case, simply said it's interesting that we haven't reached the mailbox rule. The government doesn't seem to be paying attention to that. The more important issue, and I'm addressing the lateness of the filing of the petition to the BIA, this man is locked up. It makes no difference where he's locked up. He presented evidence that on the 30th day of the operable date, March 1999. The 31st day of March. But his mailing was the 30th, Judge. I thought. I thought he handed it to prison officials on the 31st. Not that they mailed it on the 30th. No. He mailed it on the 30th. 30th. It had arrived on the 5th. And it was actually, well, it was actually, I think, postmarked the 3rd. But no, the 30th he mailed it. The little green receipt for the certified mail. He put it in the mailbox. Prison mailbox. Yes, ma'am. I understand. Yeah, on the 30th. I thought, well, I had it the 31st, that he gave an envelope containing the appeal to the BIA to the prison officials, that the prison officials mailed it out the next day, and it was received on the 5th. Yes, sir. My copy of the little green thing says the 30th. Yeah, go to my notes. But doesn't Judge Pisano specifically address the legal point and say the mailbox rule doesn't apply? He cites this one yet cruising case and says it doesn't apply. He does, Judge, to the extent, and I don't think because he dismissed this for other reasons. I think he dismissed it on claim preclusion grounds. I don't know that that's dicta. I certainly know that this circuit has never applied the mailbox rule either for or again in alien in a BIA case. The interesting point about the BIA, Your Honor, and this is where sometimes we get off the track on this, there's nothing jurisdictional about the BIA. In the entire Immigration and Nationality Act, Title VIII, it's mentioned precisely once. It was never mentioned prior to 1996. It is a creature of the Attorney General. It doesn't have jurisdiction. It doesn't prescribe jurisdiction. It's purely an agency convenience. The Immigration and Nationality Act at length talks about immigration judges and what their powers and duties and authorities are, but there's no mention of the BIA, no mention of administrative appeals. The suggestion that the BIA dismisses these cases for lack of jurisdiction is simply a stretch. That's an internal matter. They have regulations prescribed by the Attorney General which says they shall not take these if they're one day late. This court has determined, and again in this Chigaris case, I'm going to get to that in a second here, this court has determined that statutory limitations, particularly in Section 1229A of Title VIII, are statutes of limitations and may be waived for different reasons, fraud, duress, mistake. So this suggestion that it's a day late to the Board of Immigration Appeal, no case, no court ever has jurisdiction for any reason thereafter, there's no basis for it, simply not. Now, sometimes the courts do say, well, if you fail to pursue your administrative remedies, it's a prophylactic. We're not going to permit you to be heard in this court. That's routine. That's a routine defense for the government. But the suggestion that a one-day, two-day late filing would preclude this man from being heard on a legitimate habeas corpus petition is no basis. The court may hear it. Let's assume for the moment we have jurisdiction. You're saying with regard to the drug charge that there was an early 90s proceeding. Yes, sir, 1992. The government didn't show up. Twice. Three times, Judge. Three times. And the court did what? The immigration judge, Bruce Barrett, terminated the proceedings. And there's no record of that, is there? Or at least do we have a record? All I have, Judge, all I have on that is Judge Pisano's, and that's the entire record that I have. I have Judge Pisano's letter of opinion that he filed. So how are we to know? I'm not even sure it's a moment, but how are we to know what happened in 1992? How are we to know what happened in 1999? Because we don't have record, do we? I didn't get it. I simply don't have it. What we do know, and I'm taking Judge Pisano's letter of opinion as the factual basis. After the Real ID Act, normally the Third Circuit would not look at that opinion. It would be a direct review. But I'm taking his letter of opinion as a factual summary because he, in turn, used the government's factual summaries. And he says that, A, three times the government either failed to show up and then terminated because the trial attorney was late. I don't have the facts, Your Honor. I suggest that that strikes me as odd. So you're saying that's a disposition that's entitled to preclusion of them bringing up that particular issue again. Yes, sir. Okay. Now, IRERA found that for an aggravated felony, and IRERA came out in 1996, is that right? September 30th, 1996, effective 1st of April, 1997. And so it said that an aggravated felony could get you in a position where you could be removed. Correct? Strictly speaking, yes, sir. And is it retroactive? It wouldn't have to be, Judge. As my brief points out, aggravated felonies were an old concept when IRERA came out in 1996. But this was added in, this particular case? It added nothing, Judge. It simply reiterated what the Immigration and Nationality Act, then at 8 U.S. Code 1251A4B, said. And that had been added in 1990 by IMAC 1990. But when the government was moving in 92, it was basically moving on another prong, not aggravated felony. That's correct, sir. And so aggravated felony, when was the first time they could actually move on that particular argument? 29th of November, 1990, the effective date of the Immigration Act of 1990. Not 96? No, sir, absolutely incorrect. Because? Because the statute, deportability, based on aggravated felony, parentheses drug dealing, was on the books on the 29th of November, 1990. Judge Pisano says in footnote 2, in a quote of his decision, the court finds that because the charges in the second proceeding, in 99, were different from the first proceeding and could not have been brought in the first proceeding, race judicata and collateral estoppel, what he is. So he's looking at that and saying these are different. They couldn't have been brought in 92. Therefore, the petitioner's line of attack saying, hey, you already got me on this once and lost, can't stand up. How is he wrong? What's wrong? He's absolutely wrong that the basis aggravated felony wasn't in existence prior to 1996, just to make it an error of law. Remember, Judge, this guy was on counsel. He didn't have an opportunity to respond to that, but I can respond to that. It was on the books. It's there for everybody to look. I've recited what it said in my brief. Now, he is correct in a highly hyper-technical sense. The only thing that 1996 IRIRA did, and this is at 8 U.S. Code 1227, small a, 2, capital A, three little i's. That's the new aggravated felony. All that did was renumber it from 1254, all that other stuff, to 1227. That's the total difference. The text was the same. There's absolutely no difference whatsoever. The government, a trial attorney, or I guess a U.S. attorney, told Judge Pisano that. Was 1996 changing just merely the numbers for what? The section number, not even the subsection, Judge. The section number. It has to do with, if I can back up. I hope I don't have enough time. It has to do with a little history here. In 1986, 1985, somebody in Las Vegas synthesized crack cocaine by mixing it with an alkali. By 1988, we had a huge drug problem in Philadelphia and nationwide, and Congress passed an act called the Anti-Drug Abuse Act of 1988. There had been one previously in 86, but that didn't address immigration issues. For the first time in 1988, the Congress comes up with this concept of aggravated felony, but they only applied it prospectively in the 1988 act. Two years later, a little bit more than two years later, November 29, 1990, they passed the Immigration Act of 1990. They renumber some of the sections, and now they make the aggravated felony slash drug dealing, and I'm only talking about drug dealing here. Aggravated felony drug dealing, a prospective ground for deportation, effective the day that the President signed it, November 29, 1990. Do we know whether the charge in 99 was based on the same criminal activity that led to the 92? No dispute about it, Judge. How do we know that without a record? Well, I think that is in the record, Judge. In the order to show cause, oh, I'm sorry, wait a minute. Talk about the 1999. I may not have it. I do know that there's no allegation from the government that this man ever committed any crimes after 1983. So when they issued the OSC in 1983, it was referred to as an OSC. When they issued that, they used a particular section of law, 241A11 or 1251A11. That's the drug section. There was no aggravated felony for them to use in 1987 when they issued this. In 1990, there was. They elected not to use it. I don't know what the particular charges were in 1999 other than that they were aggravated felony drug dealing, and I've given you the site, and drug dealing, both of which are basis of deportation. But nothing had changed except for they had been renumbered. When did the 92 removal proceeding, or then called deportation proceeding, start? In the spring, Judge. Before or after? It was in the spring. One day is May 13th. There are three dates in May or June 1992. The deportation case with Judge Brack. When did they bring it?  In fact, 87? 87. And isn't, looking at section 602D, the effective date provision of I.R.E.R.A.'s specifies that only aliens placed in proceedings on or after March 1, 1991 were deportable as a result of the aggravated felony provisions that were being made supposedly retroactive. So, in other words, in 1992, the government could not have brought an aggravated felony removal proceeding against this person for these drug charges because it wasn't available to them because this person entered, well, first of all, it wasn't available in 92, and then when it was made retroactive, it was only made retroactive back from March 1 of 91. It started in 87. Judge, some part of that makes no sense to me. I'm going to have to go look at I.R.E.R.A. 602 because I'm telling the court that I was an immigration officer in 1992 and there was a basis for deportation called aggravated felony, drug dealing. Yes, there was, but was it applicable to Mr. Gonzales' sequence? Yes, sir, it was prospective. Absolutely prospective in nature. That was affirmed by the BIA in a case called Matter of AA. It's in my brief. But when they decided AA, Judge, they're not telling the Immigration Service go ahead and use it. This was somebody who had disputed whether it was applicable to him, and they said, yes, it's absolutely applicable. That case was decided three weeks before his case was terminated. We're here for the government. Thank you very much. You should write a book. Good morning, Your Honors. Alex Kriegsman, Assistant United States Attorney on behalf of the respondents. And I'd like to start out by talking about jurisdiction, which Your Honors touched on. And I'd like to point out at first that this argument, this mailbox rule argument that Petitioner is making, he's making now for the first time. It wasn't in his opening brief. We raised the jurisdictional argument in our response brief, and they didn't file or apply. Nonetheless, it's inapplicable because the statute, 8 U.S.C. 1252, is very clear that in order to have jurisdiction in this court, an alien must first exhaust all administrative remedies available. And this court has made clear in our case and the Bach case that we cited in our briefs that when an alien fails to exhaust his administrative remedies, as Petitioner has done in this case, there's no jurisdiction in this court to review the legal basis of the IJ's order. Should the mailbox rule be applicable in immigration cases? Should an inmate be penalized by his inability to ensure that the handling of mail, once he starts it in the system, is going to be expeditious? Well, Your Honor, what I would say in response to that is that the statute is clear, the regulation is clear, it says received by, and I think it anticipates that a lot of these things are filed by prisoners, but the language of the statute is very clear. But wasn't that the reason that Houston D. Lack first came into being for a criminal matter? I mean, it's the same circumstances, right? He gave it to them in plenty of time. On the 30th, I was wrong, it wasn't the 31st, it was the 30th. That's right, he did give it to them in time, but it wasn't received on time, and that's not what the statute says. It really doesn't. It's a bit incongruous that you're arguing the very technical receipt provisions of the statute, and yet initially, whoever was the fellow, not you, obviously, in 1992, didn't show up three times when you were trying to deport the individual. That's true, but nonetheless... And so you want to say, I mean, you might just get the second bite of the apple, I'm not saying you won't, but you're saying that you don't even want this person to be before us. You didn't even want us to get to the merits, even though at one point in time we probably wouldn't be here had your guy showed up in 1992. That's true, Your Honor, but there are reasons for these regulations and strictness. For example, there's... There are reasons a person should show up for a hearing, too. That's correct, Your Honor. I don't dispute that, and I'm not trying to dispute that, but I'd like to point out... And again, the record should reflect you were not the person. Yes, that's right, Your Honor. You were in kindergarten. A little bit past, Your Honor, but not much. Maybe fourth grade. But, Your Honor, there's some things missing from the record here, and I'll address that in a moment. But part of the reason they're missing from the record is because the petitioner didn't exhaust his administrative remedies below, and the BIA would have had an opportunity to look at all these things and develop, for example, and see what happened in 1992 and what happened in 1999. And that's the reason why these jurisdictional requirements are strict, and this reason alone should end the inquiry. Well, and habeas corpus jurisdictional requirements are strict, too, and yet the Supreme Court has said that we ought to recognize the reality and not foreclose a remedy to an inmate who has things happen beyond his control. That's true, Your Honor, but in this case, as the parties have agreed in the brief, this case is treated as a review of the BIA order or the BIA decision because it was a pending habeas corpus petition, so I would submit that. But isn't this all barred by res judicata anyway since the Second Circuit threw the case out? That's exactly right, Your Honor, and I'm glad you brought that up. And the res judicata arguments, which the petitioner lays out in his brief and what the standards are, this was litigated in the Second Circuit, and all these arguments were raised or could have been raised, and when the Second Circuit dismissed it, that's it. It doesn't get another bite at the apple. And I believe the petitioner questioned what was argued before the Second Circuit, and it seems that they made this res judicata argument before the immigration judge and then attached it to the Second Circuit. It was either raised or it could have been raised, and that's the end of the story. Why don't you address the aggravated felony argument as to whether, in fact, you could have brought it in 1992? It could not have been brought in 1992. As Your Honor was correct, the 92 proceedings began with the 1987 order to show cause, and I don't think the petitioner disputes that that act was not effective in 1987. But more importantly, the nuance there and the distinction of looking at something as an aggravated felony or looking at it as a controlled substance only comes into play if the court in 1992 had addressed this issue on the merits, and they did not. The 1992 proceeding was dismissed because the attorney, not me, another attorney, didn't show up, and that's not an adjudication on the merits. There was no hearing. There were no truths presented. So respectfully submit to Your Honors that we don't even need to get into that nuance because there was nothing on the merits at the 92 hearing. Raised judicata doesn't apply. Let me go back to the question of whether the Second Circuit dismissed the case for what being frivolous. That's right. And the Supreme Court, in a case called Denton v. Hernandez, has said that a dismissal under that particular provision for frivolousness is not a dismissal on the merits. It's an opinion by Justice O'Connor. It's 504 U.S. 25 of 1992. Why isn't that applicable here? I have to confess, Your Honor, to not being familiar with that case, this issue not having been raised, this argument not being made by Petitioner in the briefs. But I think the important point is that the argument that Petitioner is making here, that the 99 proceeding should have been precluded by raised judicata, that was made. But isn't your best argument that this is an aggravated felony? That's true. If the court wants to get by that, that is a totally separate statute that wasn't in effect when the 92 proceeding began. It couldn't have been brought. Even if the court wanted to look past the jurisdictional and raised judicata problems, this was a different statute that was not effective when the 92 proceeding began. I have no further questions. Thank you, Your Honor. Thank you to both counsel for very well presented arguments. We'll take the matter under advisement. Thank you.